**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| Darlington Okonkwo, | Civil No. 05-2885 (DWF/RLE) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| Extendicare Homes, Inc., | |
| Defendant. | |

Carrie Doom, Esq., and Stephen L. Smith, Esq., The Law Firm of Stephen L. Smith, PLLC, counsel for Plaintiff.

John D. Thompson, Esq., and Leonard B. Segal, Esq., Oberman Thompson & Segal, LLC, counsel for Defendant.

**INTRODUCTION**

Plaintiff Darlington Okonkwo, a nursing assistant, brought suit against his former employer, alleging that he was discriminated against on the basis of race, color, and national origin in violation of 42 U.S.C. § 1981, and the Minnesota Human Rights Act. The matter is currently before the Court on Extendicare Homes, Inc.'s ("Extendicare") Motion for Summary Judgment. For the reasons stated below, Extendicare's Motion is granted.

**BACKGROUND**

Plaintiff Darlington Okonkwo is a black man originally from Nigeria, who was hired by Defendant to work as a certified nursing assistant in November 2003.

Defendant Extendicare Homes, Inc. is a for-profit company that operates nursing homes, assisted living facilities, and rehabilitation centers in various locations, including Robbinsdale, Minnesota.

The incident that led to Okonkwo's termination occurred in early February 2005. During Okonkwo's shift, a resident was standing by his room/hallway door with little clothes on, complaining because he wanted to use the bathroom but his roommate was in there. After being instructed to do so, Okonkwo went to the resident's room to assist the resident's roommate in the bathroom. Okonkwo and the resident disagree as to the events that happened next.

According to Okonkwo, he tried to direct the resident back into his room, and the resident pushed away from him. From there, Okonkwo went in to assist the roommate. While helping the roommate, Okonkwo heard the resident say that Okonkwo had pushed him down. Okonkwo asserts that he did not push the resident down and did not see the resident fall. After exiting the bathroom, Okonkwo admits that he saw what appeared to be the resident getting up or trying to get on the roommate's bed. Okonkwo told the resident that it was not his bed to get into. The resident then dressed himself and left the room.

The resident contends that when Okonkwo came to his room, Okonkwo grabbed him by the wrist and pushed him down. After getting up, the resident dressed himself and left the room.

The resident then came back to his room accompanied by two nurses on duty. The nurses questioned Okonkwo, stating that the resident had said that

Okonkwo had pushed the resident down. Okonkwo denied this. The police were called, and an officer interviewed both the resident and Okonkwo.

The next day, Extendicare suspended Okonkwo pending the completion of an investigation. Okonkwo's supervisors asked him to make a report of what happened. In his statement, Okonkwo asserts that he did not see the resident fall but states that he "did see him trying to get up holding the roommate's bed." (Aff. of Leonard B. Segal, ¶ 3, Ex. H, Darlington Okonkwo Deposition Exhibits, at Exhs. 21 & 22.) He also acknowledges that the charge nurses came to ask him what happened. This was before Okonkwo reported anything to them or to any other supervisor.

Both the Clinical Coordinator and a social worker separately interviewed the resident and the resident's roommate. The resident told both of them that Okonkwo had pushed him to the floor. The roommate stated that he did not see anything but that he heard the resident say that Okonkwo had thrown him down and he heard the resident yelling. The roommate believed he heard the resident fall to the ground and struggle to get up.

On February 8, 2005, Extendicare's administrator—Dan Erickson—terminated Okonkwo, not for the alleged pushing, but because Okonkwo engaged in a serious violation of resident rights by not responding and by not reporting the incident to his supervisor. Extendicare has an Employee Handbook that explains that Extendicare generally follows a five-step disciplinary process. Depending on the seriousness of the offense (i.e., Class II instead of Class I), fewer steps may be

allowed. For a Class III offense, which is what Okonkwo's offense was classified as, the employer can discharge the employee without the need to apply other lesser forms of discipline.

Okonkwo bases his discrimination claim on the difference in discipline given to Deb Johnson, who was another certified nursing assistant. Johnson is part Native American, part Caucasian. Okonkwo asserts that because her alleged actions were more egregious than his and she was not terminated, Extendicare—and specifically Dan Erickson—discriminated against him by terminating him for a less egregious violation. The Johnson violations that Okonkwo refers to are as follows:

- In 2002, a patient fell and struck her head when Johnson attempted to transfer the patient using the Hoyer lift by herself. Johnson received a discharge warning, which is the fourth step in Extendicare's five-step process.

- In 2002, Johnson was written up for leaving the floor she was working on with no other aides to care for the residents.

- In 2004, Johnson and other coworkers were accused of throwing feces on another coworker's car.

- In January 2004, Johnson allegedly told a coworker that she had fallen in love with one of the residents and that she and the resident had been engaging in sexual conduct with one another. Both Johnson and the resident deny a sexual relationship. The resident also states that any relationship was consensual.

Erickson was hired as the Extendicare administrator in July 2004. Therefore, the above incidents occurred before Erickson was the administrator. Once the last incident was known to Erickson, and after being advised by the

4

Human Resources Director, he had Johnson switch floors, and now she no longer works on the same floor as the resident with whom she allegedly had a sexual relationship.

The parties agree that Erickson is unfriendly. Okonkwo testified in his deposition that Erickson was unfriendly with everyone, including white and black employees. Even so, there is no evidence that Erickson ever made any racial comments to anyone, nor did Okonkwo ever complain about Erickson to anyone or have any disagreements with Erickson.

Erickson remained the administrator through September 1, 2005. When he started at Extendicare, 79 of the employees were black, 72 were white, and 5 were of other races. When he left Extendicare, 63 of the employees were black, 57 were white, and 5 were of other races.

## DISCUSSION

### I.      Standard of Review

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The Court must view the evidence and the inferences, which may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enter. Bank v. Magna Bank of Mo.*, 92 F.3d 743, 747 (8th Cir. 1996). However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just,

speedy, and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enter. Bank*, 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the record, which create a genuine issue for trial. *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

## II. Race, Color, and National Origin Discrimination

Okonkwo asserts that he was discriminated against on the basis of his race, color, and national origin in violation of the MHRA and Section 1981. Because Okonkwo does not present direct evidence of discrimination, this court analyzes this claim under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). *See Canady v. Wal-Mart Stores, Inc.*, 440 F.3d 1031, 1034 (8th Cir. 2006). Under *McDonnell Douglas*, Okonkwo must first establish a prima facie case of racial discrimination. If Okonkwo can make out a prima facie case, Extendicare must come forward and identify a legitimate, non-discriminatory reason for the adverse employment action. *Tolen v. Ashcroft*, 377 F.3d 879, 883 (8th Cir. 2004). If Extendicare meets this burden of production,

the presumption raised by the prima facie case disappears, and the burden shifts back to Okonkwo to show that the articulated reason was a pretext for discrimination. *Id*. The elements and analysis of a discrimination claim under the MHRA and Section 1981 are the same. *Saulsberry v. St. Mary's Univ. of Minn.*, 318 F.3d 862, 866 (8th Cir. 2003).

### A. Prima facie case of discrimination

To establish a prima facie case of discrimination based on race, color or national origin, Okonkwo must demonstrate that (1) he is a member of a protected group; (2) he was meeting the legitimate expectations of his employer; (3) he suffered an adverse employment action; and (4) that similarly situated employees outside the protected class were treated differently. *Clark v. Runyon*, 218 F.3d 915, 918 (8th Cir. 2000). The parties agree that Okonkwo has established the first and third elements of his prima facie case. They disagree about whether he has established the second and fourth elements.

First, Extendicare contends that Okonkwo did not meet its legitimate expectations because, regardless of whether Okonkwo actually pushed the resident, when a resident falls, the caregiver must assist the resident and report the incident. The Court concludes that Okonkwo was meeting Extendicare's legitimate expectations. Okonkwo was following the orders of his supervisors to help the resident's roommate in the bathroom. There is no evidence indicating that when Okonkwo saw the resident in a crouching position looking as if he was trying to get onto his roommate's bed that the resident was in any way injured, nor

7

is there evidence indicating that Okonkwo would have been able or would have had time to assist the resident before he got himself to his feet.  Further, the evidence indicates that the resident had reported the incident to Okonkwo's supervisors before Okonkwo had a chance to.  Therefore, viewing the evidence favorably to Okonkwo, at the time Okonkwo saw the resident getting up, Okonkwo was meeting Extendicare's expectations.

Second, Extendicare contends that Okonkwo has not shown that similarly situated employees, who are not black, were treated differently.  The test to determine if one is "similarly situated" is different at each stage of the *McDonnell Douglas* analysis.  *Wheeler v. Aventis Phams.*, 360 F.3d 853, 857 (8th Cir. 2004). The standard for determining whether employees are similarly situated at the prima facie stage is a "low threshold," requiring only that the employees "are involved in or accused of the same or similar conduct and are disciplined in different ways." *Rodgers v. U.S. Bank, N.A.*, 417 F.3d 845, 851 (8th Cir. 2005) (quoting *Wheeler*, 360 F.3d at 857).  Since the threshold at the prima facie stage is low, and since the nature of their employment and the narrow scope of both Okonkwo and Johnson's duties are sufficiently comparable, and where they were both involved in or accused of acts that arguably resulted in injury to a resident, this Court holds that Okonkwo has established a prima facie case of discrimination.

###    B.    Legitimate, nondiscriminatory reason

In response to Okonkwo's prima facie case of discrimination, Extendicare offered a legitimate, nondiscriminatory explanation for Okonkwo's termination—that Extendicare had an honest belief that Okonkwo engaged in misconduct. This is a legitimate reason for an adverse employment action. *Johnson v. AT&T Corp.*, 422 F.3d 756, 762 (8th Cir. 2005) (stating that "[c]ontrary to [Plaintiff's] assertion, the proper inquiry *is not* whether [Defendant] was factually correct in determining that [Plaintiff] had made the bomb threats. Rather, the proper inquiry is whether [Defendant] honestly believed that [Plaintiff] had made the bomb threats").

###    C.    Pretext

Okonkwo attempts to show pretext with evidence of inconsistent disciplinary action and lack of investigation for what he believed to be comparable conduct of another nurse assistant, Johnson. The question is whether this evidence creates a genuine issue of material fact in support of his claim that Extendicare's stated reason for his termination was not true and that Extendicare intentionally discriminated against him because of his race, color, or national origin in violation of Section 1981 and the MHRA. The standard for determining whether employees are similarly situated at the third stage (proving pretext) "is rigorous." *Wheeler*, 360 F.3d at 857 (quotation omitted); *see also Rodgers*, 417 F.3d at 853.

At one point or another, Johnson was accused of (1) an improper transfer; (2) leaving the floor unattended; (3) throwing feces on a coworker's car; and (4) having an alleged sexual relationship with a resident. Because Erickson was

9

not employed at Extendicare at the time of the first three of these accusations, Erickson only supervised over the last allegation. To show that other employees were similarly situated, Okonkwo was required to point to someone who had "dealt with the same supervisor, ha[d] been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances." *Cherry v. Ritenour School Dist.*, 361 F.3d 474, 479 (8th Cir. 2004); *Marquez v. Bridgestone/Firestone, Inc.*, 353 F.3d 1037, 1038 (8th Cir. 2004); *Clark*, 218 F.3d at 918. Therefore, in the first three instances, Johnson was not similarly situated with Okonkwo; therefore, they cannot be used to show pretext. *See Gilmore v. AT&T*, 319 F.3d 1042, 1046 (8th Cir. 2003) (finding a comparator "was not similarly situated because his discipline was not administered by the same supervisors who administered [plaintiff's] discipline").

Okonkwo's primary argument, however, is that Extendicare's reasons for Okonkwo's termination were pretextual because Erickson chose not to investigate further nor terminate Johnson, a non-black employee, who had allegedly been having a sexual relationship with one of the residents. Okonkwo contends that Johnson's conduct was comparable in seriousness, if not more egregious than his alleged misconduct.

Instances of disparate treatment can support a claim of pretext. But Okonkwo must prove that he and Johnson were "similarly situated in all relevant respects." *Riser v. Target Corp.*, 458 F.3d 817, 821 (8th Cir. 2006); *Wheeler*, 360 F.3d at 858. "We have equated the phrase 'similarly situated in all relevant

10

respects' with the statement that '[e]mployees are similarly situated when they are involved in or accused of the same offense and are disciplined in different ways.'" *Id.* (quotations omitted). "To be probative evidence of pretext, the misconduct of more leniently disciplined employees must be of 'comparable seriousness.'" *Rodgers*, 417 F.3d at 853 (quoting *Harvey v. Anheuser-Busch, Inc.*, 38 F.3d 968, 972-73 (8th Cir. 1994)).

This Court finds that Okonkwo and Johnson were not similarly situated. While having a sexual relationship with a resident and not helping a resident off the floor are both serious violations of resident's rights, both of which this Court does not approve, the two instances are not comparable for the purposes of finding pretext of discrimination. On the record before the Court, the nature of the two violations are qualitatively different. The potential harm that flows from these situations—that is to say the harm to the residents themselves and to the reputation of the nursing home—are not of comparable seriousness.

Furthermore, because of the sensitive and varying nature of the issues that are present when an employee has a sexual relationship with a resident, such as age of the resident, vulnerability of the resident, competency of the resident, as well as the emotional involvement that often attends a sexual relationship, an employer may be justified in handling the two instances in an entirely different manner. Perhaps Erickson's limited investigation into the alleged sexual relationship was based upon a valid business judgment. This Court is not permitted to review the logic behind the decision. *Rodgers*, 417 F.3d at 854

("[T]he employment-discrimination laws have not vested in the federal courts the authority to sit as super-personnel departments reviewing the wisdom or fairness of the business judgments made by employers, except to the extent that those judgments involve intentional discrimination.") (quoting *Hutson v. McDonnell Douglas Corp.*, 63 F.3d 771, 781 (8th Cir. 1995)).

Moreover, even if Erickson had been more complete in questioning employees about the alleged relationship between Johnson and a resident, it does not mean that Okonkwo was discriminated against based on his race.  At most, it shows that Extendicare neglected to discover possible sexual harassment or abuse in its workplace in a timely manner.  "Our inquiry is not whether [Extendicare's] decision was correct or wise but only whether the reported incident was the real reason for [Okonkwo's] termination and not a pretext for race discrimination." *Wheeler*, 360 F.3d at 859 (quotations omitted; brackets removed).  Here, Okonkwo offers no evidence whatsoever that he was treated in a discriminatory fashion, other than his belief that Erickson was treating him differently because of his race or national origin.  Such speculation is insufficient to establish pretext.[1]

The only inference that this Court finds inherent in the record is that Extendicare's administrator probably believed the resident's and his roommate's

---

[1]  The Court acknowledges that a colleague in this District recently denied a similar Motion for Summary Judgment in a suit brought by a different plaintiff against Extendicare.  This Court's decision does not gainsay in any way the decision of its colleague.  Rather, the Court, while making its decision with the knowledge that a similar motion has been denied in this District, bases its decision on the summary judgment record in this case.

12

version of what happened—that Okonkwo had pushed the resident down—but knew that he could not prove it.  So, the administrator terminated Okonkwo based on the violent act, not because of race.  This inference further supports this Court's finding of no pretext.

Viewing the evidence in the light most favorable to Okonkwo, he has not shown that Extendicare's reason for his termination was pretextual.  Instead, the evidence shows that Extendicare had a proper basis for its decision to terminate Okonkwo.  Because Okonkwo has not shown that he was treated differently than any other similarly situated Extendicare employee, the Court grants Extendicare's Motion.

## CONCLUSION

Accordingly, **IT IS HEREBY ORDERED THAT**:

1. The Defendant's Motion for Summary Judgment (Doc. No. 26) is **GRANTED**.

2. Plaintiff's Complaint (Doc. No. 1) is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.


Dated:  December 5, 2006              s/Donovan W. Frank
                                      DONOVAN W. FRANK
                                      Judge of United States District Court